CASE 90.—ACTION BY A. A. VAN BUREN AGAINST THE
WEISSINGER TOBACCO COMPANY TO RESCIND
CONTRACT.—December 17, 1909.

# Weissinger Tobacco Co. v. Van Buren

Appeal from Jefferson Circuit Court (Chancery
Branch, Second Division).

Samuel B. Kirby, Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Corporations—Officers—Authority of President.—Where the
president of a corporation was, under the by-laws, the chief
executive officer and head of the company, with general control of its business, and with knowledge of the other directors,
was engaged in placing treasury stock, he was authorized to
represent the corporation in such matters, and any fraudulent
representation he made while trying to place the stock were
within the scope of his employment and bound the corpora
tion.

2. Corporations—Stockholders' Action — Issue. — In an action
against a corporation to rescind subscription to stock for
fraudulent representations, where the only defenses made
were a general denial and an offer to issue the shares of
stock subscribed for, and the other stockholders were not
parties, the corporation could not raise the defense that plaintiff could not have his subscription canceled and recover from
the corporation the full amount paid by him, because the other
stockholders who also subscribed and paid for stock were
misled in the same way.

3. Corporations—Capital Stock—Subscriptions Induced by Fraud
—Remedy of Subscriber.—Where plaintiff was induced to subscribe to corporate stock on the fraudulent representation
of the president, with full authority to act, that $70,000
had been paid for the plant which the corporation had purchased and was to operate, while in fact only $50,000 had
been paid for it, and the stock was never issued to the sub-

scriber, he could have the contract of subscription rescinded and recover the subscription price paid therefor.

BULLITT & BULLITT for appellant.

WEHLE & WEHLE, A. S. BRANDEIS and LOUIS. B. WEHLE for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Charging that he was induced to purchase 20 shares of the capital stock of the Weissinger Tobacco Company by the fraudulent representations of its authorized agent, appellee, A. A. Van Buren, instituted this action against appellant, Weissinger Tobacco Company, to rescind the contract of subscription and to recover the sum of $2,000 which he paid for said stock, together with interest thereon from the date of payment. The court below gave judgment in favor of appellee, and the Weissinger Tobacco Company appeals.

In 1895 the Green River Tobacco Company owned a plant at Maysville, Ky., which it desired to sell. Henry Y. Weissinger, who had been connected with that company, persuaded several New York men to put in $50,000 for the purpose of buying the plant, with the understanding that he (Weissinger) would furnish $20,000 so as to raise the sum of $70,000, which sum he represented to be the purchase price of the plant. The Weissinger Tobacco Company was then formed. For the purpose of organizing this company, the New York capitalists subscribed for 500 shares, Henry Y. Weissinger for 194 shares, and William Marshall Bullitt and L. H. McHenry for 3 shares each. The subscription by Bullitt and McHenry were made in order to permit them to qualify as directors; they being selected for the purpose of representing

the interests of the eastern subscribers. Thus it will be seen that 700 shares of stock were subscribed for in all. The Green River Tobacco Company, by deed dated July 1, 1905, conveyed the Maysville plant to the Weissinger Tobacco Company. The consideration expressed in the deed was $70,000 cash, and the receipt of that sum was acknowledged.

On July 11, 1905, the first meeting of the board of directors was held. Henry Y. Weissinger was elected president, and William Marshall Bullitt secretary-treasurer. The acquisition of the Green River plant was ratified. Weissinger then began to solicit subscriptions for the 300 shares of stock which remained in the treasury of the company. Appellee, A. A. Van Buren, was a former resident of Louisville, but for several years had been residing part of the time in Boston and the remainder of the time in Florida. He became acquainted with Weissinger while living in Kentucky. On August 10, 1905, he received a letter from Weissinger soliciting a subscription for some of the treasury stock of the Weissinger Tobacco Company. In this letter Weissinger used the following language: "You will observe this property was reported on by two auditors, and there is no question as to its value. We have paid $70,000.00 for the Green River Tobacco Company, and have organized the Weissinger Tobacco Company." Accompanying this letter was a prospectus purporting to furnish information with reference to the organization of the new company, and giving the amount of its capital stock, the value of its assets, etc. This prospectus contains the following statement: "Capital stock to be $100,000.00 at the par value of $100.00 per share. $70,000.00 has been subscribed by eastern capitalists, and the property of the Green River Tobacco Com-

pany has been purchased with the $70,000.00, leaving a balance of $30,000.00 unsold, which will represent the cash working capital." On the second page of the prospectus, under the heading, "Distribution of Capital," there is this line: "Cash paid for the plant, $70,000.00."

From the foregoing it will be seen that Weissinger represented to appellee that stock worth $70,000 had been subscribed for, and that $70,000 had been paid in cash by the Weissinger Tobacco Company for the plant of the Green River Tobacco Company. As a matter of fact, only $50,000 was paid for the plant, and the record does not disclose that any further sum was ever paid. It does appear, however, that Weissinger represented to Bullitt that he (Weissinger) was to pay $20,000 additional to the Green River Tobacco Company. It was afterwards ascertained by the members of the directory that Weissinger was only expecting to pay $12,500 for the plant, and in return for that was proposing to get $20,000 in stock of the Weissinger Tobacco Company. In other words, he was to get a commission of $7,500, and the real purchase price of the property was $62,500, instead of $70,000. As a matter of fact, none of the $20,000 was ever paid. Therefore, when Weissinger represented to appellee that $70,000 had been paid for the plant, $50,000 was all that had been actually paid, and was all that was ever paid. On the faith of the letter and prospectus sent to him, appellee agreed to and did subscribe for $2,000 worth of stock. He thereupon mailed to Weissinger a check for that amount, payable to the order of Henry Y. Weissinger, president. Accompanying the check was a statement to the effect that he was sending the check to cover his subscription for 20 shares of treasury stock in the

Weissinger Tobacco Company. Appellee subsequently wrote several letters and sent some telegrams demanding his stock certificate. Receiving no satisfactory answer, he then communicated with his attorney, who promptly took steps to have the contract of subscription rescinded.

The twelfth by-law of appellant company provides that the president shall be the chief executive officer and head of the company, and shall have the general control and management of its business and affairs, subject, however, to the right of the directors to delegate any specific power to any other officer or officers of the company. Weissinger was not only a director, but president, of the company. He not only had the authority given in the above by-law, but he was engaged, with the knowledge and consent of the other directors, in placing the treasury stock. It is due to the other directors, Bullitt and McHenry, to say that they had no knowledge of the fraudulent representations made by Weissinger, and when they ascertained that Weissinger was not only deceiving them, but others, they immediately took steps to remove him from the position he occupied. However, as Weissinger was president of the company, and had general control and management of its business and affairs, and as he, with knowledge of the other directors, was engaged in placing the treasury stock, he was authorized to represent the corporation in the matters thus intrusted to him, and any fraudulent representations he made to appellee while trying to place the stock in question were necessarily made within the scope of his employment and bound the corporation which he represented. P. C. & St. L. R. R. Co. v. Woolley, 12 Bush, 451; Toll Bridge Co. v. Betsworth, 30 Conn.

380; Clark & Marshall on Corporations, Sections 717, 721; Cook on Corporations, Sec. 726.

While it does not appear that the Weissinger Tobacco Company received the benefit of the $2,000 paid for the stock subscribed for by appellee, yet the money was paid to the president of the corporation, who was authorized to manage its business and to sell its stock. It follows that the money paid by appellee was a payment direct to the corporation. Martin & Co. v. Logan, 99 S. W. 648, 30 Ky. Law Rep. 799. According to the doctrine now firmly established, there are several remedies open to a subscriber induced to subscribe by fraud. Among such remedies is the right to have set aside the subscription contract and recover the payments made on such subscription. Cook on Corporations, Sec. 152; Prewitt, Trustee, v. Trimble, 92 Ky. 176, 17 S. W. 356, 36 Am. St. Rep. 586. But it is insisted by counsel for appellant that the sole question involved on this appeal is whether or not one stockholder, having been induced to enter into an improvident subscription for stock, is entitled to have his contract of subscription canceled and to recover from the corporation the full amount paid by him, regardless of the other stockholders who also subscribed and paid for stock and were misled in the same way as appellee.

This question, however, was not raised in the record. The other stockholders are not parties to the action. No such defense was made by them, or for them by the Weissinger Tobacco Company. The only defenses made were a general denial and an offer to issue the 20 shares of stock. If the corporation had desired to depend upon the ground set forth in the brief of counsel for appellant, it should have done so by a pleading showing that all the stockholders

were deceived, and were therefore in the same predicament. While it may be true that the eastern stockholders were also deceived by Weissinger, yet, so far as the record before us shows, they may have known that only $50,000 was, as a matter of fact, to be paid for the plant. None of those stockholders testified in this case. What would have been the rights of all the stockholders had the corporation, for them, or the stockholders, themselves, made the defense in this action that they were all deceived in the same manner as appellee, and therefore stood upon a plane of perfect equality with appellee, we deem it unnecessary to decide. No such question is presented in the record. The only question before us is the right of appellee, who was induced by the fraudulent representations of appellant's authorized agent to purchase the stock in question, and to whom, as a matter of fact, the stock was never issued, to have the contract of subscription rescinded and to recover the subscription price. Upon the facts before us, there can be no doubt of appellee's right to recover.

For the reasons given, the judgment is affirmed.