WENTZ et al. v. SCOTT, Superintendent of Banks.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1926.)

No. 4486.

1. Corporations ⬥318—Common directors and managers occupy fiduciary relation toward both corporations, and contracts between them will be carefully scrutinized.

Common directors and managers occupy fiduciary relation toward both corporations, and contracts between them will be carefully scrutinized, and where there is an apparent unfairness in contract, burden rests on one obtaining such apparent unfair action to show his good faith and propriety of his action.

2. Evidence ⬥73—There is no presumption that common director or manager will deal unfairly with either corporation.

There is no presumption that common director or manager will deal unfairly with either corporation.

3. Receivers ⬥150—Consideration for notes to bank, given by corporation having common management, held shown by evidence showing credit was given for each note discounted.

Under Ohio Negotiable Instruments Act (Gen. Code Ohio, §§ 8129, 8133), consideration for note given bank by corporation having common management held shown by evidence in farm company's receivership proceeding, showing that, in each case where note of corporation was discounted, credit was given by bank, in absence of evidence showing no consideration or defect in notes.

4. Corporations ⬥401—Notes given by corporation to bank having same management do not place burden on holder, as in case of note of corporation made by president payable to himself.

Rule that negotiable note of corporation, made by president payable to himself, is prima facie void as to such corporation, placing burden on holder, has no application to note given by corporation to bank having same management.

Appeal from the District Court of the United States for the Southern District of Ohio; Smith Hickenlooper, Judge.

In the matter of the receivership of the Houston Farm Company. From an order of the District Court, allowing a claim in favor of H. E. Scott, Superintendent of Banks in and for the State of Ohio, Mary Wentz and others, creditors of the Houston Farm Company appeal. Affirmed.

John B. McGrew, of Springfield, Ohio (McGrew & Laybourne, of Springfield, Ohio, on the brief), for appellant Citizens' Trust & Savings Bank.

James G. Johnson and Chase Stewart, both of Springfield, Ohio (Horace L. Smith, of Xenia, Ohio, and P. R. Emery, of London, Ohio, on the brief), for other appellants.

Wilbur E. Benoy, Sp. Asst. Atty. Gen., of Ohio (C. C. Crabbe, Atty. Gen., and Frank A. Hunter, of Columbus, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This appeal is from an order of the District Court allowing a claim against the Houston Farm Company, insolvent, in favor of the superintendent of banks of the state of Ohio, in charge of and in process of liquidating the Houston Bank. The claim in question and the controversy thereover arise out of this situation:

The Houston Farm Company was incorporated under the laws of Ohio in 1908. Its purpose was the acquiring, holding, leasing, managing, renting, selling, and otherwise dealing in farm property, real and personal,

and other real estate, and rights and interests therein or secured thereby. Its authorized capital stock was $100,000, consisting of 1,000 shares of $100 each; Leon H. Houston and Edwin D. Houston, brothers, holding approximately two-thirds thereof. The Houston Bank was organized in the year 1890, with a capital stock of $50,000. Although a partnership, the capital stock was divided into shares; the principal stockholders being the two brothers just referred to. The Farm Company acquired farm property from time to time until, prior to March, 1921, it had accumulated slightly in excess of 3,000 acres in Ohio and about 1,440 acres in Colorado; the latter being practically without value. Leon H. Houston died in 1909, and Edwin D. in 1910. They were evidently able and successful business men, and the affairs of the bank and the Farm Company prospered while they lived. After their death their younger brother, Foster B. Houston, who was beneficially interested in the estate of each of them, became head of the banking partnership and president of the Farm Company. He organized several subsidiary companies, some being partnerships, others corporations.

On November 13, 1920, the bank was closed and taken over by the state superintendent of banks for liquidating purposes. The Farm Company was placed in receivership August 15, 1921. Foster B. Houston died March 15, 1922, and before the litigation over the Farm Company's notes hereinafter referred to. The total amount of the Farm Company's debts at the time of the receivership was $1,158,423.30. Of this amount the bank held notes of the Houston Farm Company, executed and delivered in its name to the bank by Foster B. Houston, its president and general manager, aggregating $588,588.-35; also several other notes, executed by various subsidiary companies and others, amounting to $20,745.92, on which the Farm Company was only contingently liable.

Appellants represent claims included in the remaining $549,089.03 of Farm Company claims, not held by the Houston Bank by way of either direct or contingent liability. The value of the total assets of the Farm Company is about $302,000. The master commissioner (to whom a reference was made in the suit in which the receivership over the Farm Company had been ordered) allowed the claims of the superintendent of banks (representing the Houston Bank) on both direct and contingent liability paper. The District Court affirmed the master's action as to the direct liability paper, but reversed it as to the contingent liability notes. The latter thus dropped out of this case. No contention is here made as to the provability of the notes made by other banks by way of direct loans to the Farm Company and evidenced by promissory notes executed through Foster B. Houston, nor with respect to Farm Company paper originally taken by the Houston Bank and rediscounted, and now held by other banks, which received it in due course before maturity. The contest here relates only to the direct liability Farm Company paper held by the Houston Bank before it went into liquidation, at which time the estates of Leon H. and Edwin D. Houston owned, between them, $49,300 of the $50,000 capital, Foster B. Houston owned $200, his wife, his son, and his daughter owned $100 each, and the widow of Edwin D. Houston owned $100 of the remaining $200.

With respect to the direct liability paper held by the Houston Bank, the superintendent of banks has offered merely the negotiable notes themselves, with proof of the signature of Foster B. Houston, by whom all were either signed or indorsed on behalf of the farm company. Appellants contend that much of this paper was given without consideration, and that, in view of the fact that the affairs of the Houston Bank, the Farm Company, and some of the subsidiary companies, were somewhat confused, each with the other, and in further view of the fact that Foster B. Houston was president of the farm company and also acted as president and manager of the bank which discounted the notes (as well as so-called president of other enterprises through whose operation part of the indebtedness arose), the presumption that these notes were given for valuable consideration does not obtain, and that the burden of proof is upon the superintendent of banks to show in each case that they were given for full and valuable consideration, and that the transaction which led to the issue of the paper was fair and free from fraud.

Appellants have not, by pleading, challenged the validity or denied lack of consideration of any of the notes so presented by the superintendent of banks, nor was any evidence offered even tending to show fraud or lack of consideration as to any of such notes, and no claim was presented of any defect in any of the same or of any equity attaching thereto, or of any personal benefit to Foster B. Houston from any of the transactions in question. Moreover, there was direct evidence that in each instance when any of the

notes of the Farm Company in question were discounted by the Houston Bank the Farm Company was given actual credit on the bank's books for the proceeds of the note.

In the statement of facts included in the transcript it is said that the sole question presented is "whether the single fact that Foster B. Houston was president of both the Houston Bank and the Houston Farm Company at the various times when said notes were executed, in and of itself, in the absence of any designation of any particular note or notes as invalid, and of any evidence of fraud, lack of consideration, defect in any note, or equity attaching thereto, or personal benefit to Foster B. Houston, and notwithstanding that the Farm Company received credit for the proceeds of each note discounted by the Houston Bank in each case, required the superintendent of banks to assume the burden in the case of each note presented by him of showing by evidence, in addition to that of the note itself, that in each case there was no lack of consideration, and that the transaction was free from fraud." This narrow question is all that is involved in this appeal.

In support of the contention that under the facts of this case the burden is on the superintendent of banks to prove the absence of fraud and the presence of consideration in the giving of the notes, appellants cite several cases, prominent among which are Ginn v. Dolan, 90 N. E. 141, 81 Ohio St. 121, 135 Am. St. Rep. 761, 18 Ann. Cas. 204; Geddes v. Anaconda, etc., Co. (D. C.) 197 F. 860, 865; Marcy v. Guanajuto Development Co. (D. C.) 228 F. 150, 151.

[1, 2] Passing for the moment the special considerations applicable to suits upon promissory notes, we greatly doubt the existence of the general rule stated in the cases cited by appellants, unless such rule is coupled with the corollary that, in the absence of evidence tending to show fraud, inequity, or lack of consideration, the burden of proof resting upon plaintiff is prima facie sustained by the presumption of honest action on the part of the common boards of directors and officers. The rule is well established that common directors and managers occupy a fiduciary relation toward both corporations; that contracts between them will be carefully scrutinized, and that where there is an apparent unfairness in the contract, or personal advantage to one party to the detriment of the other, the burden rests upon the one obtaining such apparent unfair action to show his good faith and the propriety of his act. But "there can be no presumption that the agent of two parties will deal unfairly with either." Adams Mining Co. v. Senter, 26 Mich. at page 78, quoted with approval in Rolling Stock Co. v. Railroad, 34 Ohio St. at page 461, 32 Am. Rep. 380.

Principles involved in suits to restrain corporate consolidations, or action against the interests of stockholders in one corporation in favor of the other, are analogous to those presented here. In Bigelow v. Calumet & Hecla Mining Co. (C. C. A. 6) 167 F. 721, 730, 731, 94 C. C. A. 13, it was held that, notwithstanding the proposed power of control by the one corporation over the other through ownership of the majority of its stock, the burden of showing acts and circumstances which establish the fact that an unlawful result is contemplated and will ensue, unless checked, is upon those asserting the illegality of the contract assailed. But in Hyams v. Calumet & Hecla Mining Co. (C. C. A. 6) 221 F. 529, 540, 137 C. C. A. 239, which was a case of attempted consolidation of one corporation by another, there being express testimony on the part of competent witnesses that both the consolidation and the milling plans were against the interests of the companies whose consolidation was sought to be effected by the corporation in control, we held that the burden rested upon the controlling corporation to show its good faith and the propriety of its action; and see Leavenworth v. Chicago, etc., Ry. Co. 10 S. Ct. 708, 134 U. S. 688, 707, 33 L. Ed. 1064. In Geddes v. Anaconda Co., supra (relied on by appellants), the matter under investigation involved the absorption of one corporation by the other. The actual decision was only upon a question of preliminary injunction. In Marcy v. Development Co., supra, the question of burden of proof was not necessary to the decision, as the court found that there was no fraud or unfair dealing. We do not think Corsicana Nat. Bank v. Johnson, 40 S. Ct. 82, 251 U. S. 68, 69, 64 L. Ed. 141, was intended to assert a more stringent rule than we have above announced. We are not called upon to determine the rule applicable to situations not existing here.

[3] The case now before us involves the status of negotiable paper presumably taken in due course. In Dalrymple v. Wyker, 53 N. E. 713, 60 Ohio St. 108, it was held that the law presumes the existence of a consideration for a promissory note, and this presumption continues until it is shown that there was none, and the burden of showing this is on the party attacking the note for want of consideration. By section 8129 of the Ohio Ne-

gotiable Instruments Act (O. G. C. § 8129) it is declared that "every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." By section 8133, "absence or failure of consideration is matter of defense as against any person not a holder in due course and partial failure of consideration is a defense pro tanto. * ⁘ ⁙ " In Pierce v. Harper, 249 F. 867, 162 C. C. A. 101 (a suit upon an Ohio note), we held, following Dalrymple v. Wyker, that the burden was upon plaintiff to show by a preponderance of the evidence a valuable consideration for the note sued upon, but that the note itself, when produced and introduced in evidence, carried with it the presumption that it was given for a valuable consideration. We do not regard Ginn v. Dolan, supra, as containing anything opposed to Dalrymple v. Wyker, as applied to the facts of the instant case. The Dolan Case involved the correctness of an instruction to the jury, on final submission, as to the burden of proof. The Supreme Court gave plaintiff the benefit of a "rebuttable presumption of law, or such facts as would prima facie support his contention," and recognized defendant's duty to "counterbalance the presumption or prima facie case."

As applied to the facts of the instant case, where there is no evidence of fraud, failure of consideration, or undue advantage, it is not of controlling importance whether the burden of proof is said, throughout the case, to rest on plaintiff, aided by the legal presumption of due consideration, or whether it is treated as shifting back to plaintiff on the presentation of evidence sufficient to overcome the legal presumption of consideration. We agree with the District Court that, even if the rule of burden of proof were as contended for by appellants, such obligation as rests upon the bank has been met by the evidence, not only by the presence of consideration expressly declared by the statute, but also by the showing that in each case in which a note of the Farm Company was discounted by the bank, the Farm Company was given actual credit for the proceeds, and that in the absence of all other proof this must be held to constitute a showing by satisfactory evidence that the proceeding was fair and to the advantage of the Farm Company. This being so, and in the light of the admitted lack of evidence of absence of consideration, of defect in the notes, or of any equity attaching thereto, or of any claim of personal benefit to Foster B. Houston from any of the transactions, there is no call for separate consideration of a defense of fraud or actual personal benefit to him. The fact that the receiver has not been able to find any stock books or stock records of the Farm Company ·has no tendency to alter the situation otherwise existing. Not only is there nothing to indicate that Foster B. Houston is responsible for that situation, but it is not apparent that such stock books or stock records did or naturally would contain anything of interest to this present inquiry. We cannot agree wth appellants that the record contains anything suggesting that Foster B. Houston was executing a fraud in favor of the bank, and against the Farm Company, by giving and negotiating the latter's notes in the large amount shown. We have no reason to doubt the correctness of the master's conclusion that "the record discloses a probable lack of business acumen upon the part of Foster B. Houston in the management of his various enterprises, but no element of fraud appears."

[4] Decisions that the negotiable note of a corporation, made by the president payable to himself, is prima facie void as to such corporation, and that the burden is on the holder to show that it is in fact an obligation of the corporation, have no application here. We cannot accept appellants' theory that the Farm Company notes payable to the bank are the same in legal effect as if made to Foster B. Houston personally. We think the only reasonable inference from the record is that the money was borrowed by the Farm Company from the bank.

Manifestly, a conclusion, as applied to the facts stated in this record, that the superintendent of banks has not met such burden of proof as rests upon him, could result in nothing but inequity. Foster B. Houston is dead, and he alone was apparently familiar with the details of his transactions, and there are said to be no books of account or other memoranda which throw light upon them in so far as the great volume of paper now in the hands of the superintendent of banks is concerned. It would be as impossible for that officer to establish the negative of appellants' contention as for appellants to establish the affirmative.

Our conclusion that the decree below should be affirmed makes it unnecessary to pass upon the legal effect of appellants' failure, by pleading of any form, to challenge the validity of the consideration of any of the notes in question. As to the effect of such

failure, see Smith v. Chase, etc., Co. (D. C.) 197 F. 466, 471. But the fact of such failure of pleading (and presumably of knowledge of any facts justifying it) emphasizes the inequity which would result from failing to recognize that the superintendent of banks has, upon this record, sustained every burden properly resting upon him.

The decree of the District Court must be affirmed.