**MOSIER, Estate of, In re: MOSIER, Plaintiff, v. MOSIER et, Deceased, Defendants.**

Probate Court, Franklin County.

No. 159052. Decided December 21, 1954.

Carl Tresemer, Columbus, for Albertine B. Mosier, plaintiff.

Bricker, Margburger, Evatt & Barton, Columbus, for Marjorie M. Balogh, Executrix of the estate of O. H. Mosier, defendant.

## OPINION

By McCLELLAND, J.

This matter comes before the Court on a petition filed on August 25, 1954, for a declaratory judgment as to certain matters raised by the petition. The plaintiff is Albertine B. Mosier, the surviving spouse of O. H. Mosier. In the petition she alleges that O. H. Mosier died on April 7, 1954, aged eighty-four years; that on April 19, 1954, the will of O. H.

Mosier was admitted to probate in the Probate Court of Franklin County, Ohio, and the defendant, Marjorie M. Balogh was appointed Executrix and qualified as such.

The plaintiff further says that she is now seventy-two years of age and was married to O. H. Mosier on November 1, 1941, when she was fifty-nine years of age and he was seventy-one years of age; and that on the day preceding the marriage Mr. Mosier, who was a lawyer, practicing his profession in Columbus, Ohio, caused the plaintiff to come to his law office and caused her to sign an antenuptial agreement, a copy of which is attached to the petition, and by the terms of which agreement the plaintiff purported to release all claims and demands, rights and interests, which she might have as the future wife of O. H. Mosier in his property and estate; that at the time of signing the agreement she was betrothed to wed said O. H. Mosier, reposed full confidence in him and trusted him to deal fairly and reasonably and lawfully with her; that the terms of said purported agreement were dictated exclusively by him; that she read the agreement before she signed it, but had no exact knowledge of the actual extent or value of his property, and no knowledge or understanding as to the extent or value of the rights proposed to be released by the purported agreement, but she thought they were simply releasing to their respective children their rights in property which they respectively then owned; that she relied solely on her prospective husband's advice in signing said purported agreement; that he did not disclose to her or inform her of the nature, extent and value of the interest which the agreement purported to release and did not advise her to seek or obtain legal advice in connection therewith; and that the plaintiff was not actually advised or counseled as to her legal rights.

The plaintiff further alleges that the decedent left real and personal property of a value of not less than $58,700.54, as shown by the inventory filed in this Court, and that the only provision made for the plaintiff in said purported agreement upon the death of O. H. Mosier is the sum of $3,000.00, payable at the rate of $100.00 per month, beginning fifteen days after his death.

The plaintiff further alleges that if Mr. Mosier had died without a will, she would be entitled to a certain amount of money as his surviving spouse by way of a widow's allowance, her statutory exemption, and her distributive share in the estate.

The plaintiff further alleges that Mr. Mosier lived in the house owned by her and by her completely furnished and equipped, for one hundred and fifty months from November 1941 to April 1954 inclusive, the reasonable rental value of which is not less than $100.00 per month.

The plaintiff further alleges that Mr. Mosier agreed to pay her the sum of $30.00 per month in lieu of a pension which she was receiving at the time of the marriage, and that for sixteen months prior to his death he failed to make said payments.

The plaintiff further alleges that she has presented to the Executrix a claim in the amount of $16,666.66 as her distributive share, a claim for $2500.00 as her exemption, a claim in the amount of $3000.00 for widow's allowance, and a claim for $15,000.00 as a reasonable rental value of the property which was occupied by both Mr. and Mrs. Mosier during the period of converture.

The plaintiff prays that the so-called antenuptial agreement dated October 30, 1941, be cancelled, set aside and held for naught, that she be restored to all her legal rights as surviving spouse of O. H. Mosier, and that she be allowed the respective amounts as set forth in the petition.

To this petition was attached a copy of the antenuptial agreement executed on October 30, 1941. Upon examination of this agreement, the Court finds that the parties contemplated marriage with each other, that each has children by a former marriage, and that both are owners of real and personal property, and that the party of the first part (being Mr. Mosier) is the owner of certain real estate therein described, the value of which is $47,075.00, and that said property is subject to mortgage indebtedness in the amount of $5450.00, the net estate being of the value of $41,625.00.

The agreement further sets for the value of the property owned by the prospective wife as real estate valued at $5000.00 and personal property in the amount of $500.00, making a total of $5500.00. She also alleges that she has an annuity payable $66.45 a month during her natural life, all of which property was inherited from her former husband.

The agreement further stipulates that neither party shall have any right or claim in or to the property of the other, either during their marriage or upon the death of the other, except as to the lien of the second party on the real estate of the first party for the cash payment as thereinafter provided her. The agreement also contains the following language:

"Now, therefore, in consideration of said marriage and of the covenants of the second party herein contained, the said first party hereby promises and agrees that the representative of his estate shall pay to the second party the sum of Three Thousand Dollars ($3,000.00), payable as follows: One Hundred Dollars ($100.00) fifteen days after the decease of the first party and a like amount each thirty days thereafter, until the full sum is paid in full, which cash payment shall be a lien on any real estate owned by the first party at the time of his decease, provided, however, that at his option the said first party, during his life. may purchase an annuity for a like sum payable in monthly installments in any good and solvent insurance company, which annuity shall be received by the second party as a substitute for said cash payment. Provided also that if the second party shall predecease the first party, this agreement shall terminate upon her death.

"Whereas, the second party now is, and since the death of her former husband, has been, receiving a pension from the U. S. Government of Thirty Dollars ($30.00) per month which will cease upon her re-marriage, the first party agrees to pay her the sum of Thirty Dollars ($30.00) per month during his natural life, which is in lieu of the pension above referred to, and he further agrees that if he should purchase any real estate in the future and should sell the same and a profit be made thereon, he will pay to the second party one-third of such profit."

The remainder of the contract contains the agreement that each shall release dower, etc., in the property of the other during coverture and that each gives up all rights in the property of the other.

At the hearing of this matter it was contended by counsel for Mrs.

Mosier that this action is one for the determination of heirship and that by reason thereof Mrs. Mosier was a competent witness to testify as to the transactions leading up to the contract. This Court held that this action is not one for determination of heirship, but is an action to cancel a written contract and by virtue of the provisions of §2317.03 R. C., Mrs. Mosier is not a competent witness, and the Court now re-affirms that holding.

The plaintiff asks that the Court set off to her her interest in the property as if her husband had died intestate. This the Court cannot entertain until and unless the antenuptial agreement is set aside. The plaintiff has also asked the Court to grant the sum of money which she claims due from the estate of Mr. Mosier because of the fact that he lived in her home during converture. This is a matter over which this Court has no jurisdiction, and, therefore, declines to grant the relief prayed for as to that particular claim.

We now come to consider the merits of the controversy. It is fundamental that a man and woman, who are of full age and of sound mind, may enter into an agreement to marry providing said agreement is made after a full disclosure to each other of the property held by each of them, that the same is not unfair under all of the circumstances, and that each understands the legal effect of the contract. If the agreement was unfair, we must look to the circumstances existing at the time the contract was made and must determine what the effect or the operation of the agreement might be if death should occur immediately after the marriage. We cannot look to the future conduct of the parties toward each other as to any matters extraneous to the terms of the antenuptial agreement.

We will now determine what Mrs. Mosier gave up at the time she entered into this agreement. The agreement recites that Mr. Mosier had an estate at the time the agreement was made in the net amount of $41,625.00. Should Mr. Mosier have died intestate and no contract having been made, Mrs. Mosier would have an exemption of $2500.00; she would have had approximately $2500.00 for her year's allowance, and after the debts were paid she would have one-third of the balance. Deducting the $2500.00 for year's allowance and the $2500.00 for the exemption would leave a balance of $36,625.00. We make no deduction for debts and in that event she would be entitled to $12,208.00 as her distributive share. This amount plus the amount of $5000.00 above mentioned, would make a total of $17,208.00. She also by the terms of the contract gives up her annuity of $30.00 per month payable for the remainder of her life. In order to determine the value of this right which she forfeits, we must consider her life expectancy at the age of fifty-nine years and by the mortality tables compute the then cash value of the annuity. In examining the tables for computing the cash value of the annuity, we find that the then cash value of the annuity was $5407.00. Adding this to the $17,208.00 would make the sum $22,615.00. This is the amount which she has given up by the terms of the contract.

Now what has Mr. Mosier given up by the contract, assuming that she had died intestate immediately after the marriage and no contract was made. The contract provides that she has a net worth of $5500.00.

His exemption would be twenty percent (20%) thereof, which would be $1100.00, leaving a balance of $4400.00. We disregard the matter of debts as we did in computing the prospective rights of Mrs. Mosier. In doing so, Mr. Mosier would be entitled to one-third of the balance of $4400.00, which amounts to $1466.67. To this we add the sum of $1100.00, making the sum of $2566.67, which is the value of his interest in her estate which he gives up by virtue of the terms of the contract. In addition thereto, he agrees to pay to Mrs. Mosier the sum of $30.00 per month during his natural life, but not during the remainder of her life in case he predeceases her. This is to be in lieu of the pension of $30.00 per month to which she was entitled prior to her marriage. In order to ascertain the cash value of that annuity, we must take the expectancy of life of Mr. Mosier at the age of seventy-one years and compute the value of that annuity. In doing so, we find the cash value of same to be $2890.00. Adding this to the sum of $2566.67, we arrive at a figure of $5456.67, which is the amount of the interest in his wife's estate which he gives up, together with the cash value of the annuity which he agrees to pay her for the remainder of his life. In addition thereto, Mr. Mosier agrees that subsequent to his death, his personal representative will pay to Mrs. Mosier the sum of $3000.00, which is to be paid at the rate of $100.00 per month, beginning fifteen days after his death. Assuming that the $3000.00 would be paid immediately after his death, we must then calculate the then cash value of that $3000.00. Taking the expectancy of life of Mr. Mosier, we find that the then cash value of the $3000.00 is $2030.40. This added to the foregoing figure makes a total sum of $7497.40, which is the consideration which Mrs. Mosier agreed to pay in consideration of what Mrs. Mosier agrees to forfeit.

We therefore find that Mrs. Mosier, by virtue of the contract, has given up a prospective interest in the amount of $22,615.00, while Mr. Mosier has given up a prospective amount of approximately $7497.00. In other words, he has given up only about one-third of the amount which she has agreed to give up by the terms of the contract. He, however, has paid more than the amount which would be the cash value of that annuity, but we cannot consider that. We can only consider the values of their respective properties at the time the contract was made.

Plaintiff, in her petition, says that she read said purported agreement before she signed it, but had no exact knowledge of the actual extent or value of his property, and no knowledge or understanding as to the extent or value of the rights proposed to be released by the purported agreement, but she thought they were simply releasing to their respective children their rights in property which they respectively then owned; she further says that she relied solely on her prospective husband's advice in signing said purported agreement, but that he did not disclose to her or inform her of the nature, extent and value of the interest which the agreement purported to release and did not advise her to seek or obtain legal advice in connection therewith; neither is there any proof of her allegation that she was not so instructed; and neither is there any proof that she had explained to her her rights under the law in case he should die without a will. She is constructively presumed to know the law and it may be argued that ignorance of the law is no

excuse. That maxim, however, cannot be applied in the present case. Mr. and Mrs. Mosier from the time of their betrothal up until the time of his death were living in confidential relationship to each other and he, therefore, was under the legal obligation to disclose to her fully her rights in his property in case no antenuptial contract was made. There is no evidence that he did explain to her those rights, nor is there any evidence that he did not explain same to her. The testimony discloses that when Mrs. Mosier signed the antenuptial contract she came to Mr. Mosier's office by appointment and was accompanied by a woman friend. After the exchange of a few pleasantries, Mr. Mosier said to her "sign here." This she did and then departed. She did not read the contract at the time it was signed, but she alleges in her petition that she did read the contract. There is therefore a strong presumption that he and she discussed the matter prior to her coming to his office to sign same. As we have heretofore observed, there is no evidence that he did explain the legal effect of the contract to her, nor is there any evidence that he did not do so.

We have now stated the facts and the amount which each one gave up in the rights of the property of the other as an inducement for entering into the contract.

Mr. Mosier at that time was a man seventy-one years of age, and Mrs. Mosier was fifty-nine years of age. Both had children by a former marriage.

Now, what is the effect of that contract under the law as we understand it? Probably the best statement of the law of Ohio is contained in the opinion of Judge Williams, reported in the case of **Juhasz v. Juhasz, 134 Oh St 257**, the first four syllabii of which read as follows:

"An agreement to marry gives rise to a confidential relation between the contracting parties.

"An antenuptial contract voluntarily entered into during the period of engagement is valid when the provision for the wife is fair and reasonable under all the surrounding facts and circumstances.

"When the amount provided for the wife in an antenuptial contract entered into during the existence of the confidential relation arising from an engagement is wholly disproportionate to the property of the prospective husband in the light of all surrounding circumstances and to the amount she would take under the law, the burden is on those claiming the validity of the contract to show that before it was entered into he made full disclosure to her of the nature, extent and value of his property or that she then had full knowledge thereof without such disclosure.

"Although the provision made for the intended wife in an antenuptial contract is wholly disproportionate, she will be bound by voluntarily entering into the contract after full disclosure or with full knowledge."

At page 264 of the opinion, the Court finds the following language which, we believe, to be a statement of the law of Ohio and which is in conformity to the syllabii:

"An engagement to marry creates a confidential relation between the contracting parties and an antenuptial contract entered into after the engagement and during its pendency must be attended by the ut-

most good faith; if the provision for the prospective wife is, in the light of surrounding circumstances, wholly disproportionate to the means of her future husband and to what she would receive under the law, the burden rests on those claiming the validity of the contract to show that there was a full disclosure of the nature, extent and value of the intended husband's property, or that she had full knowledge thereof without such disclosure, and that she, with this knowledge, voluntarily entered into the antenuptial settlement. Debolt v. Blackburn, 328 Ill., 420, 159 N. E., 790; Watson v. Watson, 104 Kan., 578, 180 P., 242; in re Waller's Estate, 116 Neb., 352, 217 N. W., 588; Harlin v. Harlin, 261 Ky., 414, 87 S. W. (2d), 937; Pattison v. Pattison, 129 Kan., 558, 283 P., 483; in re Flannery's Estate, 315 Pa., 576, 173 A., 303; Denison v. Dawes, 121 Mo., 402, 117 A., 314; Megginson v. Megginson, 367 Ill., 168, 10 N. E. (2d), 815; in re Khyart's Estate, 100 Neb., 337, 160 N. W., 120; In re Maag's Estate, 119 Neb., 237, 228 N. W., 537. This court is aware that the burden of proof does not shift in Ohio (Ginn, Admr., v. Dolan, 81 Oh St 121, 90 N. E., 141, 135 Am. St. Rep., 761); but is of the opinion that disclosure as a justification or excuse for the disproportionateness is an affirmative defense.

"Under the rule, the contract is not invalidated merely because the portion fixed for the bride is small or disproportionate. After being fully informed and advised, the intended wife may be entirely satisfied with the provision made for her, and, if she then voluntarily enters into the contract, she is bound by its terms."

In this case the prospective wife agreed to take one-sixth of the value of her husband's estate in consideration of her giving up all of her statutory rights as a surviving spouse. The Court, in that case, found that the property which the prospective wife agreed to receive instead of her statutory allowances consisted of one-sixth of the property and that therefore the division was so unfair as to raise the presumption that the contract was fraudulent and therefore set the same aside.

Our attention has also been called to the case of **Speckman v. Speckman, et al.**, reported in **15 Oh Ap 283**, the second and third syllabii of which are as follows:

"Where such a contract is in contemplation, it is the duty of the dominant party to make a clear and complete disclosure of all facts pertaining to the subject-matter of the contract and thereby place full information as to the property rights and interests involved in possession of the opposite party.

"An antenuptial contract which fixes the interest of the wife in the thirty-one thousand dollar estate of her husband at thirteen hundred dollars, and bars her from dower and all other rights in the estate, which was signed by the wife without disclosure as to the property rights and interests of the husband, at a time when she was forty-six and he sixty-four years of age, and with unquestioning confidence in his disposition to deal fairly with her, will not be upheld by the courts where the husband made no further provision during his lifetime for his wife."

In examining this decision, and many others, we find that this is the only one which specifically states that one shall make a complete disclosure to the other as to the legal effect of the contract.

In the case of Mettler v. Warner, reported in 11 O. P. (N. S.) page 363, the man was worth approximately one hundred and thirty-one thousand

dollars and he made a contract with a young woman without means of support or business experience, by the terms of which he agreed to pay her an annuity of five hundred dollars and then thousand dollars payable at his death. The Court held that the amounts were so disproportionate to the statutory interest which she would receive, that the contract was held to be fraudulent.

In the **Brewer case,** reported in **84 Oh Ap 35,** to which our attention has been directed, Judge Wiseman uses the following language in syllabus 4 thereof:

"Where the husband required the wife to enter into a separation agreement at the end of a two-day discussion of their marital difficulties, during which time the wife had little or no opportunity to discuss her property rights with other members of her family or to seek individual legal advice, the court will conclude that undue advantage was taken of the wife."

In syllabus 5 thereof he uses the following language:

"Because of the dominating influence which the husband exercises over the wife, transactions between husband and wife to be valid, particularly as to the wife, must be fair and reasonable, and voluntarily and understandingly made."

Syllabus 7 thereof reads as follows:

"Whenever advice of counsel will be of real assistance to the wife in deciding whether to enter into an agrement with the husband, it is his duty to advise her to seek such counsel."

In that case the Court held the contract was not tainted with fraud and sustained same.

We have examined all of the cases cited by counsel for Mrs. Mosier and also those cited by counsel for the Executrix of his will. We must keep in mind that these contracting parties were past middle age and could be classified as persons of advanced age. Both had children by a former marriage to whom they had obligations. The contract set forth fully and accurately the nature and value of their respective property holdings. She gave up her interest in the estate of Mr. Mosier which consisted of a little more than $40,000.00, and he, for same, agreed to pay certain considerations which amounted to over $7000.00, which was approximately one-third of what she gave up. We must keep in mind the aggregate value of her property was only $5,500.00, while the aggregate value of his property was a little more than $40,000.00. Taking all of these facts into consideration, the relationship of the parties, their respective ages, and the terms of the contract, we are forced to come to the conclusion that although the respective amounts were disproportionate to the value of the property, they are not so disproportionate as to give rise to a presumption of fraud. That being the situation, the Court is impelled to sustain the motion of counsel for the Executrix to render a judgment for the defendant.

An order may be drawn accordingly.