**In re D.H. OVERMYER TELECASTING CO., INC., Debtor.**

**Bankruptcy No. B81–00506.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

April 30, 1983.

Daniel A. Zimmerman, Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for D.H. Overmyer Co., Inc.

James M. Wilsman, and Kevin T. Duffy, Parks, Eisele, Bates & Wilsman, Cleveland, Ohio, for D.H. Overmyer Telecasting Co., Inc., debtor and debtor-in-possession.

David O. Simon, Dettelbach & Sicherman, Cleveland, Ohio, for Creditors Committee of D.H. Overmyer Telecasting Co., Inc.

Susan B. Collins, and Warren Goldenberg, Baker & Hostetler, Washington, D.C., for First Nat. Bank of Boston.

David J. Rohrbacher, Cobourn, Smith, Rohrbacher & Gibson, Toledo, Ohio, for Aid Ass'n for Lutherans.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on application of D.H. Overmyer Company, Inc. ("DHO") to elect to assume or reject a certain lease of real property between DHO and D.H. Overmyer Telecasting Co., Inc. ("Telecasting"), pursuant to Section 365(d)(2)[1] of the Bankruptcy Code.

From the evidence, the Court finds that:

1. On May 19, 1969, DHO and Telecasting entered into a lease for real property located at 302 South Byrne Road, Toledo, Ohio. (Telecasting Ex. 1) DHO's counsel stipulated the admissibility of the 1969 lease with Telecasting. (Tr. Vol. I, p. 37)

2. The lease was for a period of 17 years, beginning June 1, 1969 and terminating May 31, 1986. The rental was $1,312.50 per month for the first five years, $1,575.00 per month for the second five years and $1,837.50 per month for the last seven years. (Telecasting Ex. 1)

3. The premises described in the lease were a building situated on a parcel of land

---

1. 11 U.S.C. § 365(d)(2) provides:

In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

240 feet by 133 feet for use as a television studio, plus an adjacent parking area and the right of access to and from the leased premises to Byrne Road over the existing driveway. (Telecasting Ex. 1)

4. After the 1969 lease was executed, Telecasting, at its own expense, erected additional facilities on the leased premises, namely a garage, generator pad, earth station pad and tower. (Tr. Vol. I, p. 146)

5. DHO stipulated with the Aid Association for Lutherans, mortgagee of the premises in question and additional land, that the 1969 lease continues as to DHO and the Aid Association for Lutherans as to any subsequent leases for the property. (Tr. Vol. II, p. 179)

6. On or about February 10, 1980, DHO provided Telecasting with 1,264 square feet of office space in a separate building adjacent to the leased premises.

7. On or about June 2, 1980, DHO and Telecasting executed a month-to-month lease for the premises described in the 1969 lease, plus the additional 1,264 square feet of office space, at a rental of $11,000.00 per month, effective June 1, 1980. (Applicant's Ex. A)

8. On or about November 20, 1980, DHO and Telecasting executed another lease for a term of one year for the premises described in item 7 above, at a rental of $7,000.00 per month. (Applicant's Ex. B)

9. Daniel H. Overmyer was Chairman of the Board of Directors, Vice-President of Finance and Chief Executive Officer of both DHO and Telecasting at all times mentioned herein, and was in control of both entities. (Tr. Vol. II, pp. 106, 160, 189–193, 195–197 and 210)

10. DHO has been in a Chapter XI proceeding in the Southern District of New York since November 16, 1973.

11. Telecasting was in a Chapter XI proceeding in the Southern District of New York from August 24, 1976 until February 6, 1981, when it was dismissed and filed in this Court as a Chapter 11 proceeding.

12. The statement of affairs filed by Telecasting indicates that all rental payments were current, and that the lease covering the studio land and building expires May, 1986. (Applicant's Ex. Q)

13. There are no arrearages owed to DHO.

14. The additional facilities, including the garage, generator pad, earth station pad and tower erected after the 1969 lease was executed, were within the premises described in the 1969 lease. (Tr. Vol. I, pp. 146–154)

15. Neither DHO nor Telecasting was authorized to make or enter into the purported 1980 leases.

16. Even though both DHO and Telecasting were in Chapter XI proceedings in the Bankruptcy Court for the Southern District of New York in 1980, neither company obtained the approval of the Bankruptcy Court for the Southern District of New York to enter into a lease with the other.

17. Daniel H. Overmyer dictated the terms of the June 2, 1980 and November 20, 1980 leases, using his common control of DHO and Telecasting.

18. As of September 16, 1981, the fair market lease value for the total space leased by Telecasting was $43,554.00 per year, or $3,630.00 per month. (Telecasting Ex. 4)

19. As of September 16, 1981, the fair market lease value for the 1,264 square feet not covered by the 1969 lease is $6,280.00 per year, or $523.33 per month.

20. Daniel H. Overmyer intentionally directed the execution of the 1980 leases for an amount far in excess of their fair market value.

21. Daniel H. Overmyer directed the execution of the leases with actual intent to hinder, delay or defraud the creditors of Telecasting.

22. The Court also takes judicial notice of the findings of fact made in *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823 (Bkrtcy.N.D.Ohio 1982). *See United States v. Verlinsky,* 459 F.2d 1085 (5th Cir.1972). The Court particularly notes findings 26.1–26.6.

*Conclusions of Law*

■ 1. The leases dated June 6, 1980 and November 20, 1980 (Applicants Exs. A and B, respectively) are unenforceable, because the Bankruptcy Court never approved them and no authorized person signed the leases on behalf of Telecasting or DHO.

■ 2. The leases dated June 6, 1980 and November 20, 1980 (Applicant's Exs. A and B, respectively) are unenforceable, because applicant has failed to show the fairness of the transactions between two commonly controlled corporations. *Geddes v. Anaconda Copper Mining Company,* 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425 (1921); *Corsicana National Bank of Corsicana v. Johnson,* 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919); *United States v. Delaware, L. & W.R. Co.,* 238 U.S. 516, 35 S.Ct. 873, 59 L.Ed. 1438 (1915); *In re Cuyahoga Finance Company,* 136 F.2d 18 (6th Cir.1943); *Ohio Drill & Tool Co. v. Johnson,* 498 F.2d 186 (6th Cir., 1974); *Wentz v. Scott,* 10 F.2d 426; *Nienaber v. Katz,* 69 Ohio App. 153, 43 N.E.2d 322 (1942); *Truman v. The Coghlin Machinery & Supply Co.,* 11 Ohio App. 220 (1919).

■ 3. The leases dated June 6, 1980 and November 20, 1980 (Applicants Exs. A and B, respectively) are unenforceable, because they are fraudulent conveyances under 11 U.S.C. § 548.

4. The reasonable rental for the extra square footage not covered by the 1969 lease is $6,280.00 per year, or $523.33 per month. (*See* Telecasting Ex. 4)