(No. 18500.—Decree affirmed.)
CHANCEY DEBOLT *et al.* Appellants, *vs.* VITULA C. BLACK-
BURN, Appellee.

*Opinion filed December 21, 1927—Rehearing denied Feb. 10, 1928.*

1. EVIDENCE—*what communication with attorney is not privi-
leged.* To render a communication between attorney and client
privileged it must relate to some matter about which the client is
seeking advice or be made to put the attorney in possession of
information supposed to be necessary to enable him to properly ad-
vise the client, and the disclosure of mere reasons moving the
client to make a contract which the attorney is called upon to
prepare under the client's directions, and about which no legal
advice is asked or required, is not privileged.

2. HUSBAND AND WIFE—*general rule as to when ante-nuptial
contract is valid.* Parties having a legal capacity to contract may
make a valid ante-nuptial contract, and where the intended wife
had knowledge, or reasonably ought to have had knowledge, of
the character and extent of the husband's property, an agreement
will be held valid if executed by the intended wife releasing her
right as widow in the husband's estate in consideration of cove-
nants and agreements of the husband.

3. SAME—*when ante-nuptial contract is presumed invalid—bur-
den of proof.* Where the parties are engaged to be married before
an ante-nuptial contract is entered into a confidential relation ex-
ists, and if provision made for the wife is disproportionate to the
extent and value of the husband's estate the presumption is raised
of intentional concealment by the husband, and the burden is on
those claiming the validity of the contract to prove the intended
wife had full knowledge, and where no evidence is introduced to
show that the intended wife knew the nature, character, value or
extent of the husband's property, or that the same had been dis-
closed to her before executing the agreement, the contract may be
disregarded and the widow may have partition in accordance with
her statutory rights upon the death of the husband.

APPEAL from the Circuit Court of Tazewell county;
the Hon. JOSEPH E. DAILY, Judge, presiding.

FRANK O. LEVERING, RALPH DEMPSEY, and W. J.
REARDON, guardian *ad litem,* for appellants.

WILLIAM A. POTTS, and JESSE BLACK, JR., for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

George M. Blackburn, a resident of the village of Minier, in Tazewell county, seized of real estate in that county, died legally intestate, (*Lawman* v. *Murphy,* 321 Ill. 421,) leaving him surviving appellee, Vitula C. Blackburn, his widow, Rebecca Reese, his sister, twenty-seven nephews and nieces, thirteen grandnephews and grandnieces and one great-grandnephew, as his heirs-at-law. May 23, 1925, thirty-one of these heirs commenced in the circuit court of Tazewell county a suit to partition the real estate of which Blackburn died seized, making the other heirs and the administrator of Blackburn's estate parties defendant to the bill. The bill alleged that appellee had no interest in any of the real estate because of an ante-nuptial contract entered into between Blackburn and her. Appellee filed her answer, averring that prior to the execution by her of the ante-nuptial agreement she and Blackburn were engaged to be married to each other; that she did not then know and was not informed or advised of the quantity, description or value of the property owned by him and that the agreement was null, void and fraudulent as to her, and that by the death of Blackburn she became entitled to one-half of the real estate, dower in the remaining one-half, and an estate of homestead in property in the village of Minier, where she resided. She also filed a cross-bill, praying for partition and averring her interest in the real estate to be as set forth in her answer. All of the other heirs were made defendants to the cross-bill. The defendants to the cross-bill filed a demurrer thereto, which being overruled by the court they answered, denying that the cross-complainant took any interest in the estate. The cause was referred to the master in chancery, who heard the evidence and re-

ported the same to the court, together with his conclusions and recommendation that a decree for partition be entered in accordance with the prayer of the cross-bill. Objections by all the cross-defendants which had been overruled by the master were filed with the report and ordered to stand as exceptions to the report in the circuit court. On hearing the cause on the master's report and the exceptions thereto the court overruled the exceptions, and a decree was entered June 20, 1927, confirming the master's report, setting aside the ante-nuptial agreement and granting the prayer of the cross-bill for partition, and the record is now before this court upon appeal.

The evidence shows that Blackburn's estate consisted of 200 acres of farm land near Minier, a residence property and business property in Minier worth about $62,150, and personal property worth about $21,467.70. Blackburn was married to appellee, Vitula C. Blackburn, who was the widow of a man named Clarke, October 31, 1924. He was then about eighty years of age and she was about fifty-eight. Prior to the marriage she resided on a farm of about 85 acres four miles from Minier and owned by her, worth about $15,000. October 30, 1924, she and Blackburn entered into the ante-nuptial contract here in question and acknowledged the same before a notary public, in which contract it was agreed that neither of the parties should have any right, title, estate or interest in any property, real or personal, of the other. It contained a provision that should appellee survive him, all of his estate at the time of his death should go to and be disposed of in like manner, in every respect, as if he had continued sole and unmarried. A like provision appears as to her property. The contract provided that the survivor should make no claim to any of the estate of the other which the survivor might be entitled to by virtue of the law or statute or otherwise. The evidence does not show that at the time of the making of this contract appellee had knowledge of

or was informed as to the amount or value of Blackburn's property.

About two or three weeks prior to the execution of the ante-nuptial contract Blackburn called on P. R. Murphy, a bank cashier in Minier, with some writing on a piece of paper, and told Murphy that he and Mrs. Clarke were going to get married and they wanted to draw up an agreement before they were married; that she was to retain her property and he was to retain his. Murphy told him that he would not do it, as that was the business of an attorney, and suggested getting John T. Ellif, who was then acting as Blackburn's attorney in settling up his first wife's estate. At the request of Blackburn Murphy sent for Ellif, who prepared the ante-nuptial contract in question. Ellif was called as a witness for appellee and testified to statements made to him by Blackburn on the subject of his anticipated marriage with Mrs. Clarke. Appellants insist that the relation of attorney and client existed between Ellif and Blackburn and that these conversations were privileged communications and therefore not competent evidence. If this question is properly raised, the admission of Ellif's testimony would not necessitate a reversal of this decree. In order to render a communication between attorney and client privileged, it must relate to some matter about which the client is seeking advice or be made to put the attorney in possession of information supposed to be necessary to enable him to properly advise the client. The mere disclosure of reasons moving the client to make a contract which the attorney is called on to prepare under the client's directions and about which no legal advice is asked or required is not privileged. (*Champion* v. *McCarthy,* 228 Ill. 87; *Dickerson* v. *Dickerson,* 322 id. 492.) In this case the evidence showed that Blackburn had himself prepared, in writing, the data for the contract, and what he desired was a scrivener to put it in proper form. He did not go to Ellif for advice, but, on the contrary, when Ellif sug-

gested to him that in agreements of that character there was usually some provision in money made for the intended wife, Blackburn replied that he did not want to insert that kind of provision in the agreement but wanted it to remain just as it had been prepared.

It is contended by appellants that the burden was upon appellee, seeking to repudiate the ante-nuptial contract, to show that there was an existing marriage engagement at the time the contract was entered into, and that appellee has failed to make such proof. The contract was entered into the day before the marriage was solemnized. It recites: "Whereas it is the intention of the parties hereto to enter into a marriage contract, which said marriage is shortly to be solemnized by and between said parties." This contract differs from the contracts in *Martin* v. *Collison,* 266 Ill. 172, *Yockey* v. *Marion,* 269 id. 342, and *Mann* v. *Mann,* 270 id. 83, in which cases the recital was that the contract was made in contemplation of marriage or that the parties contemplated marriage with each other. There is a distinction between contemplating entering into a marriage contract and intending to do so. Leaving out of consideration, however, the recital in the contract and Ellif's testimony, there is sufficient competent evidence of the admissions made by Blackburn to various witnesses that prior to the execution of the contract in question an engagement to marry existed between them.

It is contended by appellants that the execution of the ante-nuptial contract having been proved and there being no evidence that appellee had not full information as to her husband's means, the contract should not have been disregarded and that the decree rendered was erroneous. Parties having legal capacity to contract may make a valid ante-nuptial contract. Where the intended wife had knowledge, or reasonably ought to have had knowledge, of the character and extent of the husband's property, an agreement will be held valid if executed by the intended wife re-

leasing her right as widow in the husband's estate in consideration of the covenants and agreements of the husband in the ante-nuptial contract, but when the parties are engaged to be married before the contract is entered into, a confidential relation exists, and if the provision made for the wife is disproportionate to the extent and value of the husband's estate the presumption is raised of intentional concealment by the intended husband, and the burden is on those claiming the validity of the contract to prove the intended wife had full knowledge. (*Parker* v. *Gray,* 317 Ill. 468; *Slater* v. *Slater,* 310 id. 454; *Landes* v. *Landes,* 268 id. 11; *Warner* v. *Warner,* 235 id. 448.) The master found that no evidence had been introduced to show that appellee knew the nature, character, value or extent of Blackburn's property or that the same had been disclosed to her before executing the agreement, and that the provisions made for her in the contract were inadequate, harsh, unreasonable and disproportionate. Under the circumstances of this case, by reason of the fiduciary relation shown by the evidence to have existed between the parties at the time of the execution of the ante-nuptial agreement, the burden rested upon appellants to prove that appellee had knowledge, or reasonably ought to have had knowledge, of the character and extent of Blackburn's property, and this they failed to do. The court therefore properly disregarded the ante-nuptial contract and in the decree awarded to appellee that share of her husband's estate to which she would have been entitled had the ante-nuptial contract not been entered into.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*