### HARRISON v. COMMISSIONER OF INTERNAL REVENUE.

No. 7436.

Circuit Court of Appeals, Seventh Circuit.

May 5, 1941.

---

[1] United States v. Koller, D.C., 287 F. 418 and Twin Falls Natatorium v. United States, D.C., 22 F.2d 308.

Matthias Concannon and John O. Snook, both of Chicago, Ill., for petitioner.

Lee A. Jackson, Sp. Asst. to Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., for respondent.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Petitioner asks us to review an order of the Board of Tax Appeals sustaining a deficiency determination of the Commissioner of Internal Revenue on the ground that she had not included $21,041.41 in her gross income for the calendar year 1931. The question presented is whether the $21,041.41 that she received from the estate of a decedent constituted taxable income under the Revenue Act of 1928, § 22(a), (b) (3), 45 Stat. 791, 797, 26 U.S. C.A. Int.Rev.Acts, page 354.

Petitioner and John H. Harrison, both resident in the State of Illinois, were married on June 28, 1928. June 22, 1928, they entered into a prenuptial agreement by which he agreed to keep in force a will which would provide the following, among other things: " * * * that property of his having a value of not less than Two Hundred Fifty Thousand Dollars ($250,-000.00) shall be set aside in trust for and during the natural life of said Lucille Brian Gilmore, and of which said property so placed in trust, she shall receive after his death and for and during her natural life, the entire income thereof for her own use and benefit. * * * "

Harrison died on March 2, 1930, leaving a last will and testament, which has been duly probated in the Probate Court of Vermilion County, Illinois. By Article II of the will petitioner was to receive certain household articles and automobiles. By Article IV she was given a life estate in certain real property, remainder in fee to DePauw University. By Articles V and VI several corporate legatees received specific sums for charitable purposes. Article VIII required the executors to sell and convert into money or into high-class income bearing securities all of testator's property not specifically bequeathed or devised. By Article IX DePauw University

was to receive the "residue of the money and/or securities," except as provided in Article X. By Article X the testator bequeathed money and securities having a value of $300,000 to the Chicago Trust Company in trust to pay the income therefrom to petitioner for life, less a payment of $150 per month to testator's cousin for life, and on the death of the surviving income beneficiary to convey the corpus to DePauw University.[1]   Article XI, subparagraph 3, empowered the executors "To continue any investments by me made, or to realize upon them, and invest or reinvest the proceeds thereof." Article XI, subparagraph 5, provided that the executors might make distribution in kind to the residuary legatee. Article XI, subparagraph 6, expressed the testator's desire "that the shares of stock of the Commercial News Company owned by me shall be sold by my Executors for what they deem its fair market value." Article XI, subparagraph 7, stated that "Because I place the most complete confidence in the judgment and integrity of said Executors, it is my will and desire that their determination * * * shall be conclusive."

At his death Harrison left surviving him his widow, the petitioner, as his sole heir at law and next of kin. Under Illinois statutory law she was entitled, except for the prenuptial agreement, to renounce the will and to take in her own right one-half of the real and personal estate of her husband. Chap. 41 § 12, Ill.Rev.Stat.1939, Smith-Hurd Stats.Ill. c. 41, § 12.

The net worth of Harrison at the time of entering into the prenuptial agreement and the net value of his estate at the time of his death was in each case approximately $1,200,000. Petitioner contended that at the time of the making of the prenuptial agreement Harrison failed to disclose fully to her his financial resources and that such resources were much in excess of what she believed them to be at the time of the agreement. That the prenuptial agreement could have been set aside on this ground, see Slater v. Slater, 310 Ill. 454, 463, 142 N.E. 177; Debolt v. Blackburn, 328 Ill. 420, 425, 159 N.E. 790.

On November 25, 1930, the petitioner and DePauw University, the residuary legatee under the will, entered into a compromise agreement, the pertinent provisions of which are contained in the footnote.[2]  In 1931 the executors paid to the petitioner

---

[1] The pertinent provisions of Article X read as follow:

"X. It is my will that my Executors, as soon as may be convenient, shall turn over money and/or securities, in their hands, resulting from the sale of my property, having a value of Three Hundred Thousand Dollars ($300,000.00), to Chicago Trust Company of Chicago, Illinois, as Trustee, to have and to hold the same in trust, upon the following uses, purposes and trusts, viz.:

"Income. After paying the necessary expenses of administering this trust * * *, the net income arising from the property in the hands of Trustee shall inure to and be held by Trustee, and by it paid out and distributed to the persons, in the respective amounts, and upon the contingencies following, to-wit:

"(a) To my cousin, Caroline Sims of Frankfort, Indiana, on the first day of each month, during her lifetime, the sum of One Hundred Fifty Dollars ($150.00).

"(b) The rest and residue of said net income shall be paid by Trustee in quarterly installments to my wife, Lucille Harrison, for and during her natural life.

"The provision hereby made for my wife, Lucille Harrison, is by prenuptial agreement with her, and°is in lieu of all her other right, interest or estate, of dower, homestead, or otherwise, in my property."

[2] Among other things the compromise settlement provides the following:

"1. That the party of the first part, for and in consideration of One Hundred Thousand Dollars ($100,000) to be paid to her as hereinafter set forth, and the payment to her of interest at the rate of six per cent (6%) on the trust fund of Three Hundred Thousand Dollars ($300,000) until said amount is paid to the Trustee, and for the further consideration of the conveyance to her of the following described real estate, to-wit: [here describing real estate in Vermilion County, Illinois] does hereby waive, relinquish and forbear all right to file any bill to contest the last will and testament of John H. Harrison, deceased, and/or to set aside the prenuptial agreement * * *; and also, for the same consideration, does hereby covenant and agree that she does hereby irrevocably accept all provisions made for her in and by said will, and that she will not relinquish nor renounce said will * * *."

"3. That the said executors shall pay to the party of the first part interest at the rate of six per cent (6%) on the Three Hundred Thousand Dollars ($300,000.00) which the will of John H. Harrison pro-

the sums of $100,000 and $21,041.41 in accordance with the compromise agreement. The record discloses that the executors have never transferred the property in trust, as provided in Article X of the will, and that as late as 1940 the testamentary trust had not been set up. In the verified claim for refund filed by petitioner in 1936, she assigned the following reasons why the trust was not set up: "The trust provided for under Article X of the Will of John H. Harrison was never set up, due to the fact that the executors prior to 1934 could not make an advantageous sale of assets. In 1934, by agreement between taxpayer and De-Pauw University, the interest of taxpayer under the will was released in exchange for annuities agreed to be paid by De-Pauw University."

Section 22(b) (3) of the Revenue Act of 1928 provides that the value of property acquired by inheritance is exempt from income tax but that the income from such property is includible in gross income. In this case the Government conceded that the real estate item and the $100,000 item constituted property acquired by inheritance pursuant to a compromise settlement, and hence came within the income tax exemption of § 22(b) (3) above. As to these two items, Lyeth v. Hoey, 305 U.S. 188, 196, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, is exactly in point.

However, the Government insists that the item of $21,041.41, the sum of the payments received in 1931 pursuant to clause #3 of the compromise agreement, stands on a different footing than do the other items for two reasons: (1) because it represented an amount which petitioner was entitled to receive and in fact would have received under her husband's will, as a beneficiary of the trust therein provided for, without regard to the compromise settlement; and (2) because it was, at most, income from property acquired by inheritance and hence expressly includible in gross income under § 22(b) (3) above.

On the other hand, petitioner contends that the item of $21,041.41 stands on the same footing as do the real estate item and the $100,000 item, that all three items were received by her in spite of the will and "over and above what she would have received under the will," and that Lyeth v. Hoey, supra, is authority for the proposition that the same treatment should be accorded the three items. The Board held against the petitioner, stated that the nature of the payments of the $100,000 item and the $21,041.41 item was not the same, although the payments were made under the same compromise agreement, and concluded that Lyeth v. Hoey, supra, did not support petitioner's contention. 41 B.T.A. 1217, 1223, 1224.

The first question to be determined is whether the petitioner, as income beneficiary of the trust described in the will, was entitled to receive income from the date of the death of the testator, irrespective of any compromise settlement. Petitioner argues that under Illinois case law she was not entitled to receive income under the will until the setting up of the trust. City Trust & Saving Bank v. Knight, 249 Ill.App. 617, 628; Clifford v. Davis, 22 Ill.App. 316, 320, 324; Valentine v. Ruste, 93 Ill. 585. The most recent pronouncement by the Illinois Supreme Court is to be found in the case of State Bank of Chicago v. Gross, 344 Ill. 512,

---

vides shall be paid by said executors to Chicago Trust Company, of Chicago, Illinois, as Trustee for the party of the first part, said interest to be computed from the date of the death of John H. Harrison on March 2nd, 1930, and to be paid to the party of the first part until said Three Hundred Thousand Dollars ($300,-000.00) is paid by the said executors to said Trustee, and in making said payment of said interest the said executors shall have credit for One Hundred Fifty Dollars ($150.00) per month during that period of time that they have paid to Caroline Sims, one of the beneficiaries under said trust. It is understood by the parties to this agreement that this provision is equitable because said will made no provision for the support of the party of the first part and said Caroline Sims, the beneficiaries under said trust fund, from the date of the death of said deceased, to the time that said trust fund shall be paid to said Trustee, and said trust fund cannot be paid under the terms of said will until the stock of the deceased in the Commercial-News is sold, and during said interim the earnings of said stock in said Commercial-News will be more than the six per cent (6%) interest herein provided for to be paid to the party of the first part. The interest to be paid as aforesaid shall be paid quarter annually on the last days of March, June, September and December respectively."

176 N.E. 739, 75 A.L.R. 172. Consequently, we may ignore the cases cited by petitioner to the extent that they differ from the Gross case, supra.

■ The Gross case applied the general rule that unless a contrary intention appears, an income beneficiary is entitled to the income from the trust property from the date of the death of the testator. See also the Restatement of the Law of Trusts, Section 234. On page 518, of 344 Ill., 176 N.E. on page 741, of its opinion the court in the Gross case quotes from another case: "Especially pertinent among the many cases cited in support of this rule is In the Matter of Bird, 241 N.Y. 184, 149 N.E. 827, where the court said: 'When is a trust created? The answer depends upon the intentions of the testator as expressed in his will—not upon the action or non-action of executor or trustee—not upon their caprice or diligence. It may be upon the testator's death. It is, if there is nothing to indicate a contrary design. * * *'"

In the Gross case the will provided for the creation of a $25,000 trust, the net income therefrom to be paid to the granddaughter of the testatrix. The testatrix died on April 9, 1925, and the executor did not turn over to the trustee the securities or money (which constituted the trust fund) until December 19, 1927. The court concluded that the income earned prior to the turn-over from executor to trustee belonged to the income beneficiary of the trust, and that since no separate account of the income received from the trust property had been kept by the executor, the income beneficiary was entitled to interest on the principal amount of the trust fund.

The court made the following observations on pages 521 and 522 of 344 Ill., 176 N.E. on page 742 of its opinion: " * * * An attempt is made to distinguish between the word 'income,' used by the testatrix, and the word 'interest,' designating a penalty. No reason exists for any such distinction in the present case. Neither the executor nor the estate will suffer any penalty, because the record shows that almost all of the assets of the estate consisted of income-producing securities when the executor assumed control. The income which the testatrix wanted her granddaughter to receive from the $25,000 was constantly accruing from these securities. This income, under the will, belongs to Wilhelmina Gross and not to the estate. Since no separate account of the income received from this fund was kept by the executor, the court properly ruled that it should bear interest at the legal rate of 5 per cent."

In effect, it was here recognized that the income beneficiary of the trust was entitled to some return for the use of the principal amount of the trust fund by the executor.

The record in the instant case shows that the testator had given petitioner (his widow) the income of a fund definite in amount, that much of his estate consisted of income-producing securities, and that the income which he wanted her to receive was accruing constantly from these securities, other securities or their equivalent in money. Indeed it is difficult to discover an intent that the income earned by the trust property prior to its delivery to the trustee should remain with the residuary legatee (DePauw University).

■ However, petitioner claims she finds such an intent on the part of the testator in paragraph 3 of the compromise agreement and in Articles VIII, X and XI of the will. We have considered the entire will and it is our conclusion that it was the intention of the testator to benefit the petitioner from the date of his death. Nor do we believe that the particulars emphasized by petitioner really militate against our conclusion. Manifestly, the understanding of the principal legatees as to the meaning of the will and the vesting of discretionary powers in the executors in connection with the liquidation of the estate, do not spell an intent on the part of the testator to enrich the residuary legatee at the expense of his widow.

The prenuptial agreement is unequivocal in stating that the petitioner should receive the income from the trust property "after his death and for and during her natural life." The will directed his executors to turn over the trust property to the trustee "as soon as may be convenient," and recited that the trust provision made for petitioner was by prenuptial agreement with her and in lieu of all her other right in his property. Since the will was unquestionably seeking to carry out the terms of the prenuptial agreement, it is supposable that the intent of the testator was to have the income paid from the date of his death.

In fact, so far as the record shows, the trust property has never been delivered to the trustee. The explanation given for this failure to turn over the property is that the trust was to be created out of the proceeds of the sale of the testator's property and that the executors lacked the power to distribute any assets in kind to the trustee. We confess the will is not too definite in this respect, but it would appear that the testator did not mean to limit the authority of the executors. For instance, the testator vested extensive discretionary powers in the executors, instructed them to "continue any investments by me made," directed them "as soon as may be convenient" to deliver money or securities to the trustee, and empowered the trustee to "continue any investments by me made." Certainly the non-action or turn-over failure of the executors would not operate to destroy the right of the beneficiary of the trust to the income earned by the trust property.

Even if we assume an absence of expression of intent one way or the other, which is the most that can be said for petitioner's argument, it will be presumed without more, under the general rule adopted by the Gross case, supra, that the income was to be payable from the date of the death of the testator.

It follows that irrespective of the compromise settlement, petitioner was entitled to the benefit of two rights as income beneficiary of the trust described in the will, namely, (1) to have the principal amount of the trust fund turned over to the trustee, and (2) to receive the income earned by the fund from the date of the testator's death.

Petitioner contends that a reading of the compromise agreement precludes the conclusion that the $21,041.41 item had its source in her right to the income from the testamentary trust. See footnote 2. Yet the compromise settlement stated (1) that the payments of interest, on the principal amount of the fund which petitioner was entitled to have set aside as a trust, was to cease when the executors turned over the fund to the trustee, and (2) that the testator's cousin was to receive the amount of $150 per month out of these payments. Clearly no one would argue that the payment under the settlement to the cousin was in compromise of her rights as heir rather than a carrying out of the terms of the will. We deem it peculiarly unreasonable to argue that the payment of interest to the petitioner was not of the same character.

We hold therefore that the petitioner did not receive the $21,041.41 item as an addition to the will, the understanding of the parties in this respect notwithstanding, but that she did receive this money through the testator's will, either as a substitute for income derived from the trust fund or as interest paid by the executors for the withholding of a fund which they were under a duty to pay over to the trustee.

The last question to be determined is whether the payment of the $21,041.41 item constituted a charge upon the whole of the estate and hence was not includible in the taxable income of the beneficiary under the authority of Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534, and Helvering v. Pardee, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365. We think these cases are clearly distinguishable.

In the instant case the petitioner was entitled to have a fund of $300,000 turned over by the executors to the trustee, the income therefrom to be paid to the petitioner and testator's cousin. By the compromise settlement it was agreed that the executors would pay interest in this fund only so long as they failed to comply with their duty to turn the fund over to the trustee. Although it is true that the settlement provided for payment of interest in a fixed amount not expressly conditioned upon the executors' receipt of income in an equal amount, we can not ignore two significant circumstances. First, the settlement was made in implied recognition that the beneficiaries were entitled to the income earned by the fund or, in lieu thereof, a fair return for the withholding of the fund from the trustee. Second, the settlement was made in view of the fact that much of the $1,200,000 estate, of which the principal amount of the trust fund was merely a part, was producing income constantly and earning more than was agreed to be paid by the executors.

Nor were the interest payments a charge upon the corpus of the fund. In fact the compromise agreement recognizes that the entire corpus of $300,000 was to be delivered to the trustee undiminished by any interest payments. In the present case the corpus of the trust remains intact, and the two beneficiaries receive income payment of which had its source in

their right to the income from the trust. If all the income earned by the trust fund had been paid to the petitioner, it would have constituted taxable income. Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897; Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365. Certainly compromise or satisfaction of her claim to this income which is taxable, did not convert the payment received into something other than taxable income.

Petitioner also points to Benfield v. United States, Ct.Cl., 27 F.Supp. 56, 63, but it is not our impression that the Benfield case adds much one way or the other. In that case the payments had their source in an unexecuted will, by virtue of the settlement agreement, and to this will the court looked in order to determine whether the payments were a charge on the whole estate. In the instant case the payments have their source in the will, irrespective of the settlement agreement, and the will indicates the payments were to be income charges only.

The decision of the Board of Tax Appeals is affirmed.