# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Chaney*, 2013 IL App (3d) 120565

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF LAVERNE G. CHANEY, Deceased (Charles Chaney, Executor of the Estate of Laverne G. Chaney, Deceased, Petitioner-Appellant, v. Sherry S. Chaney, Respondent-Appellee). |
| District & No. | Third District<br>Docket No. 3-12-0565 |
| Filed | November 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking a declaration that the antenuptial agreement decedent entered into with his wife prevented her from renouncing his will and asserting her statutory inheritance rights, the trial court properly applied the legal standard in *In re Marriage of Murphy*, which required antenuptial agreements entered into prior to the enactment of the Illinois Uniform Premarital Agreement Act of 1990 be fair and reasonable in order to be valid and enforceable, and under the circumstances, the agreement between decedent and his wife was not fair and reasonable and was unenforceable. |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 10-P-21; the Hon. Stanley B. Steines, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Bruce L. Carmen, of Carmen Law Office, PC, of Cambridge, and Clayton L. Lindsey, of Williams McCarthy, LLP, of Oregon, for appellant.

Thomas D. Murray, of Dixon, for appellee.

Panel                JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1        In the context of a probate proceeding, petitioner, Charles Chaney, as the executor of the estate of his late father, Laverne G. Chaney, filed a petition for miscellaneous relief, seeking, among other things, a declaration from the trial court that the antenuptial agreement entered into between Laverne and respondent, Sherry S. Chaney, was valid and binding and that it precluded Sherry from renouncing Laverne's will and taking her statutory forced share of the estate as Laverne's surviving spouse (755 ILCS 5/2-8(a) (West 2010)). After an evidentiary hearing, the trial court found that the antenuptial agreement was not fair and reasonable and that it was invalid and unenforceable and denied Charles's request for declaratory relief. Charles appeals. We affirm the trial court's ruling.

¶ 2                                    FACTS
¶ 3        The issue raised in this appeal is a narrow question of law, and we will only set forth those facts that are necessary for our determination of that issue. Laverne and Sherry were married on July 4, 1986, when Laverne was in his late fifties and Sherry was in her late forties. At the time of the marriage, Laverne had substantially more assets than Sherry. Both Laverne and Sherry had been married previously, and each had children from their prior marriages. The day before their marriage to each other, Laverne and Sherry went to the office of Laverne's attorney and signed an antenuptial agreement that the attorney had prepared. Among other things, the agreement prohibited either person from renouncing the will of the other person and asserting his or her statutory inheritance rights upon the other person's death. At the time that the agreement was executed, Laverne's attorney also had Laverne sign an acknowledgment that he had advised Laverne that the agreement was of "questionable validity" due to the limited provisions it contained for the support of Sherry.

¶ 4        In February 2010, after more than 23 years of marriage to Sherry, Laverne passed away. At the time of his death, Laverne still had substantially more assets than Sherry. Laverne had executed a will in 1979 during one of his previous marriages. The will named Charles as

executor of Laverne's estate. Charles filed a petition to admit the will to probate. Sherry sought to renounce the will and to take her statutory forced share of the estate as Laverne's surviving spouse. Charles filed a petition asking the trial court to, among other things, declare that the antenuptial agreement was valid and binding and that it prevented Sherry from renouncing the will and asserting her statutory inheritance rights.

¶ 5        An evidentiary hearing was held on the petition. As part of the hearing, the parties filed written closing arguments and made oral arguments to the trial court on two different dates. At the conclusion of the hearing, the trial court applied the legal standard set forth in *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 299-300 (2005), for antenuptial agreements executed prior to the 1990 enactment of the Illinois Uniform Premarital Agreement Act (750 ILCS 10/1 *et seq.* (West 2010)), that to be valid and enforceable, the agreement had to be, among other things, fair and reasonable. The trial court found that the agreement did not provide an equitable settlement for Sherry in lieu of her inheritance rights, that it was not fair and reasonable, and that it was invalid and unenforceable. The trial court, therefore, denied Charles's request for declaratory relief. This appeal followed.

¶ 6                                    ANALYSIS

¶ 7        On appeal, Charles argues that the trial court erred in finding that the antenuptial agreement was invalid and unenforceable. Charles does not challenge the factual findings that underlie the trial court's decision, a challenge which would have invoked a manifest weight standard of review on appeal. See *Vancura v. Katris*, 238 Ill. 2d 352, 373-74 (2010) (the trial court's factual findings will be affirmed unless they are against the manifest weight of the evidence). Instead, Charles raises a narrow question of law, that a standard of fairness less stringent than that stated in *Murphy* should have been applied by the trial court in determining the validity of the antenuptial agreement in this case because the agreement was triggered by the death of one of the spouses and not by the dissolution of the marriage as it was in *Murphy*. Because Charles raises a question of law, the standard of review on appeal is *de novo*. See *id*.

¶ 8        As Sherry correctly points out, however, Charles has forfeited that argument by not raising it in the trial court. It is well-settled law in Illinois that issues, theories, or arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal. See, *e.g.*, *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994) (issues and theories); *Kiefer v. Rust-Oleum Corp.*, 394 Ill. App. 3d 485, 493 (2009) (arguments); *Norway Tree Farm, Inc. v. Baugher*, 8 Ill. App. 3d 1061, 1062 (1972) ("issues, questions, points or contentions not presented in the trial court and properly preserved for review will not be considered on appeal"). Despite making written and oral arguments to the trial court as to the validity of the agreement, Charles did not at any time assert that a different standard of fairness applied under the facts of this case. Charles's argument, therefore, has been forfeited on appeal. See *id*.

¶ 9        Charles's reliance on *Yee v. City of Escondido, California*, 503 U.S. 519, 534-35 (1992) (new arguments may be made on appeal as long as the underlying issue was raised previously), for his conclusion to the contrary is misplaced. *Yee* cites the forfeiture rule that

applies in the United States Supreme Court and not the forfeiture rule that applies here. While we recognize, as Charles suggests, that the forfeiture rule is a limitation on the parties and not on the court (see *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504-05 (2002)), Charles has not provided us with any compelling reason to relax the forfeiture rule in this case.

¶ 10    Even if we were to consider the merits of Charles's argument on appeal, we would still have to uphold the trial court's ruling because there is simply no support in the law for Charles's position that a different standard of fairness should be applied. The case relied on by Charles in support of that position, *In re Estate of Cullen*, 66 Ill. App. 2d 217, 220-26 (1965), addressed an issue of contract and statutory interpretation as to whether certain language in an antenuptial agreement was sufficient to bar the claimant from receiving the statutory surviving spouse's award. As such, the *Cullen* decision in no way supports Charles's argument in this appeal. Indeed, the case law in this area demonstrates that Illinois courts have applied the same standard of fairness regardless of whether the antenuptial agreement was triggered by a dissolution of marriage or by the death of one of the spouses. See, *e.g.*, *Murphy*, 359 Ill. App. 3d at 299-300 (dissolution); *Petru v. Petru*, 4 Ill. App. 2d 1, 8-13 (1954) (death of one of the spouses to the agreement).

¶ 11                                          CONCLUSION

¶ 12    For the foregoing reasons, we affirm the judgment of the circuit court of Whiteside County.

¶ 13    Affirmed.

¶ 14    JUSTICE HOLDRIDGE, dissenting.

¶ 15    I dissent. Charles argues that the trial court erred by applying an improper and antiquated standard of "fairness" in determining whether the antenuptial agreement signed by the parties is valid and enforceable. As an initial matter, even though Charles did not raise this argument before the trial court, I would not find the argument forfeited. As the majority acknowledges, the doctrine of forfeiture is an admonition to the parties, not a limitation on the reviewing court's jurisdiction. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504-05 (2002); see also *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996). Accordingly, notwithstanding the general rule of forfeiture, a reviewing court may consider an argument not raised below, particularly where, as here, the issue is one of law and is fully briefed by the parties on appeal. *Edgar*, 174 Ill. 2d at 11; *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 27 (1991). Moreover, our appellate court often "relax[es] the harsh mandates of the waiver doctrine if [it] feel[s] that the particular issue would aid in maintaining a uniform body of precedent or if the interests of justice require the issue's consideration." *Skidmore v. Throgmorton*, 323 Ill. App. 3d 417, 420 (2001). Addressing the purely legal (and fully briefed) issue that Charles raises in this appeal would help to ensure a just result and to clarify the legal standards governing the enforcement of antenuptial agreements upon the death of a spouse. Accordingly, I would address the issue raised by

-4-

Charles rather than deem it forfeited.

¶ 16    Turning to the merits, I believe that the trial court applied an improper standard in declaring the parties' antenuptial agreement invalid and unenforceable. The court expressly found that Sherry's decision to sign the antenuptial agreement before her marriage to Laverne was "voluntary and *** without duress or coercion." The court also found that Sherry entered into the agreement with "full knowledge" and "without fraud." In support of that finding, the court noted that: (1) the agreement was clear and unambiguous; (2) Sherry was in her forties at the time and had some degree of sophistication; (3) Sherry testified that she understood the purpose of the agreement and the parties acted in accord with the agreement after their marriage; (4) attorney Schott admonished Sherry about the purpose and terms of the agreement before Sherry signed it, and Sherry had an opportunity to ask Schott questions about anything she did not understand; and (5) Sherry knew the extent of Laverne's assets before she signed the agreement, including Laverne's antiques and both of his businesses.

¶ 17    Nevertheless, the trial court refused to enforce the parties' antenuptial agreement because it found that the agreement was not "fair and reasonable." The court reached this conclusion because it determined that the agreement did not guarantee Sherry an "equitable financial settlement in lieu of her waiver of her rights to property upon [Laverne's] death." Specifically, the court found the agreement unenforceable because it would result in a "great disparity" in the parties' assets (which the court found to be unfair given the length of the marriage and Sherry's commitment to Laverne's antiquing business), and because it provided nothing for Sherry other than the "nominal" statutory spouse's award. In short, the trial court found the agreement unfair because it felt that Sherry had received a relatively paltry financial settlement in lieu of her waiver of property rights, despite the fact that Sherry had agreed to that settlement with full knowledge and in the absence of any fraud, coercion, or duress. In other words, the court determined the "fairness" of the antenuptial agreement by comparing the *amount of money* that Sherry received with the value of Laverne's estate, not by determining whether the agreement had been entered into knowingly and voluntarily.

¶ 18    The trial court believed that this particular standard of "fairness" was prescribed by the applicable case law.[1] I disagree. Although we have applied the "equitable financial settlement" standard in two cases involving the dissolution of marriage (*In re Marriage of Murphy*, 359 Ill. App. 3d 289, 300 (2005), and *Warren v. Warren*, 169 Ill. App. 3d 226, 231 (1988)), we have not always applied that particular standard when evaluating the validity of antenuptial agreements providing for the disposition of a spouse's property upon the death of that spouse. In evaluating the "fairness" of an antenuptial agreement in the latter context, Illinois courts often focus on whether the party challenging the agreement signed the agreement under fraud or duress and whether she knew the extent of the other party's assets before signing the agreement. See, *e.g.*, *Debolt v. Blackburn*, 328 Ill. 420, 424-25 (1927); *Petru v. Petru*, 4 Ill. App. 2d 1, 12-13 (1954). These cases suggest that, if the complaining

---

[1]The court stated that "[c]ase law says that in order for an antenuptial agreement to be fair and reasonable Illinois requires that the agreement guarantee both parties an equitable financial settlement in lieu of a waiver of their right to property or maintenance."

spouse signed the antenuptial agreement with full knowledge and there is no evidence of fraud or duress, courts will enforce the agreement upon the death of the other spouse even if the agreement makes no provision for the surviving spouse, at least when there are no children from the parties' marriage. The amount of the surviving spouse's financial settlement under the antenuptial agreement could be relevant as evidence that the surviving spouse was defrauded or was otherwise unaware of the other spouse's assets when she signed the agreement. See *Debolt*, 328 Ill. at 425; *Petru*, 4 Ill. App. 2d at 12-13. However, a disparity in the assets awarded to the parties under the agreement, standing alone, cannot establish unfairness or invalidate an otherwise valid antenuptial agreement. Antenuptial agreements should be enforced as written unless there is evidence of duress or fraud (such as concealment of assets).

¶ 19    In my view, this rule makes perfect sense, particularly when applied to the circumstances presented in this case. When they decided to marry, Laverne was in his fifties and Sherry was in her forties. Each had children from a prior marriage. It is eminently reasonable that, before marrying Sherry, Laverne wanted to ensure that his assets passed to his existing children upon his death rather than to Sherry and her heirs. Thus, as a condition of marriage, Laverne presented Sherry with a prenuptial agreement that would accomplish that result. As the trial court found, Sherry was a sophisticated woman who understood the agreement's provisions and was fully aware of the extent of Laverne's assets before she signed the agreement. In my view, the parties' agreement should be enforced as written. We should not invalidate an agreement freely and knowingly made by two competent adults simply because we feel that the agreement resulted in a financial arrangement that we happen to consider "unfair." If the parties freely and knowingly chose a particular financial arrangement, we should honor their wishes even if it offends our subjective sense of fairness. To rule otherwise would be to interfere with the parties' right to contract.[2] I don't believe that we should trample that fundamental right simply because we feel that one of the parties could have driven a harder bargain and gotten a better deal.

¶ 20    The trial court appeared to share my reluctance to interfere with the parties' agreement when it noted that it was "typically not in the business of protecting parties from what [it] would call a bad bargain." However, the trial court ultimately felt compelled to invalidate

---

[2]The Illinois legislature recognized this principle when it enacted the Illinois Uniform Premarital Agreement Act (the Act) (750 ILCS 10/1 *et seq.* (West 2012)), which applies to any antenuptial agreement executed on or after January 1, 1990. The Act provides that an antenuptial agreement is unenforceable only if the party against whom enforcement is sought proves that: (1) he or she did not execute the agreement voluntarily; or (2) the agreement was unconscionable when it was executed and, before execution of the agreement, the party was not provided a fair and reasonable disclosure of the other's property, did not waive the right to such disclosure in writing, and did not have (and could not reasonably have had) an adequate knowledge of the other's property. 750 ILCS 10/7(a) (West 2012). The Act omits the previous common law requirements that an enforceable agreement must also be "fair and reasonable" and must not result in an "unforeseen condition of penury" for the party challenging the agreement. Thus, the Act expresses a public policy of enforcing contracts as written absent evidence of fraud, duress, or lack of knowledge.

the agreement because it concluded that antenuptial agreements were enforceable under Illinois common law only if they provided each party an "equitable" (*i.e.*, proportional) financial settlement. As noted above, I disagree with that interpretation of the law. Although Illinois common law required antenuptial agreements to be "fair and reasonable," I do not believe that this empowers (much less requires) courts to engage in a free-wheeling consideration of the "fairness" of the ultimate financial *result* agreed to by the parties, particularly in cases involving the disposition of assets upon the death of a spouse. Rather, I believe that courts should determine only whether the agreement was *fairly made*, *i.e.*, whether it was entered into voluntarily and with full knowledge.

¶ 21 In any event, even if the common law empowered us to engage in a more searching inquiry into the substantive "fairness" or "reasonableness" of the agreement, I fail to understand how the result sanctioned by the majority in this case can be considered either fair or reasonable. The majority's ruling invalidates a contract knowingly and voluntarily made by the parties and deprives Laverne's children of a portion of their inheritance, in clear violation of Laverne's wishes. It does this despite the fact that, as the trial court found, Sherry knowingly and voluntarily agreed to take nothing from Laverne's estate upon his death. The parties lived according to their antenuptial agreement without modifying the agreement (and, apparently, without any objection by Sherry) throughout their entire 24-year marriage, which ended with Laverne's death. Now, after Laverne has died, the agreement has been declared invalid by judicial fiat. That is like a referee changing the rules of a game after the game has been played, which strikes me as the height of unfairness.

¶ 22 One final point bears mentioning. In my view, the conception of "fairness" espoused by the trial court and the majority in this case appears to be informed by paternalistic notions of marriage and an outdated conception of women's economic power. Specifically, the trial court and the majority conclude that an antenuptial agreement cannot be "fair and reasonable" unless it affords a woman a proportional share of the assets of the husband who predeceased her, even if the woman voluntarily relinquished any claim to her husband's estate despite having full knowledge of his assets. This view appears to rest on the assumption that women have unequal economic power and that courts need to protect women from their own contracts. While this view may have been justified in an earlier era, it makes little sense in today's world. Women currently outperform men in college, comprise more than 50% of the matriculating law students, and compete with men in every aspect of economic life. More than 23 years ago, the Illinois legislature enacted a public policy reflective of modern economic realities by passing the Act, which requires courts to enforce antenuptial agreements so long as they are knowingly and voluntarily made. (As noted above, the Act does not allow courts to invalidate an antenuptial agreement merely because it results in a disproportionate allocation of assets to one of the parties.) Unlike the Act, the prior common law rule (which applies in this case) requires courts to inquire into the "fairness" and "reasonableness" of antenuptial agreements. However, in the context of agreements governing the disposition of assets upon the death of a spouse, even some pre-Act cases suggest that we should determine the "fairness" of the agreement by reference to the parties' knowledge and voluntariness when executing the agreement, not the amounts they receive

under the agreement. See, *e.g.*, *Debolt*, 328 Ill. at 424-25; *Petru*, 4 Ill. App. 2d at 12-13.[3] I believe that we should apply those cases rather than older cases (or any dissolution cases) which follow more outdated and paternalistic rules.

---

[3]Although the common law (unlike the Act) requires courts to ensure that an antenuptial agreement does not result in an "unforseen condition of penury" for the party opposing the agreement, the trial court expressly found that the agreement in this case did not put Sherry in a state of penury.